## UNITED STATES *v.* YERMIAN

No. 83–346.   Argued March 27, 1984—Decided June 27, 1984

64

POWELL, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, MARSHALL, and BLACKMUN, JJ., joined. REHNQUIST, J., filed a dissenting opinion, in which BRENNAN, STEVENS, and O'CONNOR, JJ., joined, *post*, p. 75.

*Carolyn F. Corwin* argued the cause for the United States. With her on the briefs were *Solicitor General Lee, Assistant Attorney General Trott*, and *Deputy Solicitor General Frey.*

*Stephen J. Hillman*, by appointment of the Court, 464 U. S. 1036, argued the cause for respondent. With him on the brief was *James R. Dunn.*

JUSTICE POWELL delivered the opinion of the Court.

It is a federal crime under 18 U. S. C. § 1001 to make any false or fraudulent statement in any matter within the jurisdiction of a federal agency.[1] To establish a violation of § 1001, the Government must prove beyond a reasonable doubt that the statement was made with knowledge of its falsity. This case presents the question whether the Gov-

---

[1] That section provides in full:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

ernment also must prove that the false statement was made with actual knowledge of federal agency jurisdiction.

## I

Respondent Esmail Yermian was convicted in the District Court of Central California on three counts of making false statements in a matter within the jurisdiction of a federal agency, in violation of § 1001. The convictions were based on false statements respondent supplied his employer in connection with a Department of Defense security questionnaire. Respondent was hired in 1979 by Gulton Industries, a defense contractor. Because respondent was to have access to classified material in the course of his employment, he was required to obtain a Department of Defense Security Clearance. To this end, Gulton's security officer asked respondent to fill out a "Worksheet For Preparation of Personnel Security Questionnaire."

In response to a question on the worksheet asking whether he had ever been charged with any violation of law, respondent failed to disclose that in 1978 he had been convicted of mail fraud, in violation of 18 U. S. C. § 1341. In describing his employment history, respondent falsely stated that he had been employed by two companies that had in fact never employed him. The Gulton security officer typed these false representations onto a form entitled "Department of Defense Personnel Security Questionnaire." Respondent reviewed the typed document for errors and signed a certification stating that his answers were "true, complete, and correct to the best of [his] knowledge" and that he understood "that any misrepresentation or false statement . . . may subject [him] to prosecution under section 1001 of the United States Criminal Code." App. 33.

After witnessing respondent's signature, Gulton's security officer mailed the typed form to the Defense Industrial Security Clearance Office for processing. Government investigators subsequently discovered that respondent had submitted

false statements on the security questionnaire. Confronted with this discovery, respondent acknowledged that he had responded falsely to questions regarding his criminal record and employment history. On the basis of these false statements, respondent was charged with three counts in violation of § 1001.

At trial, respondent admitted to having actual knowledge of the falsity of the statements he had submitted in response to the Department of Defense security questionnaire. He explained that he had made the false statements so that information on the security questionnaire would be consistent with similar fabrications he had submitted to Gulton in his employment application. Respondent's sole defense at trial was that he had no actual knowledge that his false statements would be transmitted to a federal agency.[2]

Consistent with this defense, respondent requested a jury instruction requiring the Government to prove not only that he had actual knowledge that his statements were false at the time they were made, but also that he had actual knowledge that those statements were made in a matter within the jurisdiction of a federal agency.[3] The District Court rejected that request and instead instructed the jury that the Government must prove that respondent "knew or should have known

---

[2] Respondent maintained this defense despite the fact that both the worksheet and the questionnaire made reference to the Department of Defense, and the security questionnaire signed by respondent was captioned "Defense Department." The latter document also contained a reference to the "Defense Industrial Security Clearance Office," stated that respondent's work would require access to "secret" material, and informed respondent that his signature would grant "permission to the Department of Defense to obtain and review copies of [his] medical and institutional records." App. 29, 32. Nevertheless, respondent testified that he had not read the form carefully before signing it and thus had not noticed either the words "Department of Defense" on the first page or the certification printed above the signature block.

[3] Respondent's proposed instruction would have informed the jury:

"Unless you find, beyond a reasonable doubt, that defendant knew his statements were being made to the United States Department of Defense, you must acquit." Defendant's Proposed Instruction No. 9, App. 49.

that the information was to be submitted to a government agency."[4] Respondent's objection to this instruction was overruled, and the jury returned convictions on all three counts charged in the indictment.

The Court of Appeals for the Ninth Circuit reversed, holding that the District Court had erred in failing to give respondent's requested instruction. 708 F. 2d 365 (1983). The Court of Appeals read the statutory terms "knowingly and willfully" to modify both the conduct of making false statements and the circumstance that they be made "in any matter within the jurisdiction of [a federal agency]." The court therefore concluded that "as an essential element of a section 1001 violation, the government must prove beyond a reasonable doubt that the defendant knew at the time he made the false statement that it was made in a matter within the jurisdiction of a federal agency." Id., at 371 (footnotes omitted). The Court of Appeals rejected the Government's argument that the "reasonably foreseeable" standard provided by the District Court's jury instructions satisfied any element of intent possibly associated with the requirement that false statements be made within federal agency jurisdiction. Id., at 371–372.

The decision of the Court of Appeals for the Ninth Circuit conflicts with decisions by the three other Courts of Appeals

---

[4] The jury instructions concerning the essential elements of a § 1001 violation read in full:

"Three essential elements are required to be proved in order to establish the offense charged in the indictment:

"FIRST: That the defendant made and used, or caused to be made and used, a false writing or document in relation to a matter within the jurisdiction of a department or agency of the United States, as charged;

"SECOND: That he did such act or acts with knowledge of the accused that the writing or document was false or fictitious and fraudulent in some material particular, as alleged;

"THIRD: That the defendant knew or should have known that the information was to be submitted to a government agency;

"FOURTH: That he did such act or acts knowingly and willfully." Id., at 25.

that have considered the issue. *United States* v. *Baker*, 626 F. 2d 512 (CA5 1980); *United States* v. *Lewis*, 587 F. 2d 854 (CA6 1978) *(per curiam); United States* v. *Stanford*, 589 F. 2d 285 (CA7 1978), cert. denied, 440 U. S. 983 (1979). We granted certiorari to resolve the conflict, 464 U. S. 991 (1983), and now reverse.

## II

The only issue presented in this case is whether Congress intended the terms "knowingly and willfully" in § 1001 to modify the statute's jurisdictional language, thereby requiring the Government to prove that false statements were made with actual knowledge of federal agency jurisdiction.[5] The issue thus presented is one of statutory interpretation. Accordingly, we turn first to the language of the statute.

## A

The relevant language of § 1001 provides:

> "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully . . . makes any false, fictitious or fraudulent statements or representations, . . . shall be fined . . . ."

The statutory language requiring that knowingly false statements be made "in any matter within the jurisdiction of any department or agency of the United States" is a jurisdictional requirement. Its primary purpose is to identify the factor that makes the false statement an appropriate subject for federal concern. Jurisdictional language need not contain the same culpability requirement as other elements of the offense. Indeed, we have held that "the existence of the fact

---

[5] The Government never objected to the District Court's instruction requiring proof that respondent reasonably *should have known* that his false statements were made within the jurisdiction of a federal agency. Thus, in this case the Government was required to prove that federal agency jurisdiction was reasonably foreseeable. See n. 14, *infra.*

that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute." *United States* v. *Feola,* 420 U. S. 671, 676–677, n. 9 (1975). Certainly in this case, the statutory language makes clear that Congress did not intend the terms "knowingly and willfully" to establish the standard of culpability for the jurisdictional element of § 1001. The jurisdictional language appears in a phrase separate from the prohibited conduct modified by the terms "knowingly and willfully." Any natural reading of § 1001, therefore, establishes that the terms "knowingly and willfully" modify only the making of "false, fictitious or fraudulent statements," and not the predicate circumstance that those statements be made in a matter within the jurisdiction of a federal agency.[6] Once this is clear, there is no basis for requiring proof that the defendant had actual knowledge of federal agency jurisdiction. The statute contains no language suggesting any additional element of intent, such as a requirement that false statements be "knowingly made in a matter within federal agency jurisdiction," or "with the intent to deceive the Federal Government." On its face, therefore, § 1001 requires that the Government prove that false statements were made knowingly and willfully, and it unambiguously dispenses with any requirement that the Government also prove that those statements were made with actual knowledge of federal

---

[6] The structure of the statutory language found in the 1934 predecessor to § 1001 made the issue equally clear. The jurisdictional language of that provision appeared as a separate phrase at the end of the description of the prohibited conduct and provided in pertinent part:

"[W]hoever shall knowingly and willfully . . . make . . . any false or fraudulent statements or representations, . . . in any matter within the jurisdiction of any department or agency of the United States . . . shall be fined." Act of June 18, 1934, ch. 587, 48 Stat. 996.

The most natural reading of this version of the statute also establishes that "knowingly and willfully" applies only to the making of false or fraudulent statements and not to the predicate facts for federal jurisdiction.

agency jurisdiction.[7]  Respondent's argument that the legislative history of the statute supports a contrary interpretation is unpersuasive.

## B

The first federal criminal statute prohibiting the making of a false statement in matters within the jurisdiction of any federal agency was the Act of October 23, 1918 (1918 Act), ch. 194, 40 Stat. 1015.[8]  That Act provided in pertinent part:

> "[W]hoever, . . . for the purpose and with the intent of cheating and swindling or defrauding the Government of the United States, or any department thereof, . . . shall knowingly and willfully . . . make . . . any false or fraudulent statements or representations . . . shall be fined . . . ."

Interpreting that provision in *United States* v. *Cohn,* 270 U. S. 339 (1926), this Court held that only false statements made with intent to cause "pecuniary or property loss" to the Federal Government were prohibited.  *Id.,* at 346–347. The Court rejected the Government's argument that the

---

[7] Because the statutory language unambiguously dispenses with an actual knowledge requirement, we have no occasion to apply the principle of lenity urged by the dissent.  See *McElroy* v. *United States,* 455 U. S. 642, 658 (1982); *United States* v. *Bramblett,* 348 U. S. 503, 509–510 (1955) (although "criminal statutes are to be construed strictly . . . , this does not mean that every criminal statute must be given the narrowest possible meaning in complete disregard of the purpose of the legislature").

[8] The earliest predecessor of the 1918 Act limited its criminal sanctions to false claims made by military personnel and presented to "any person or officer in the civil or military service of the United States."  Act of Mar. 2, 1863, 12 Stat. 696.  The Act was extended in 1873 to cover "every person"—not merely military personnel—who presented a false claim to an officer or agent of the United States.  Act of Dec. 1, 1873, approved June 22, 1874.  In 1908 and 1909, the penalties of the Act were changed, and the statutory provision was redesignated as § 35.  Act of May 30, 1908, 35 Stat. 555; Act of Mar. 4, 1909, 35 Stat. 1088.  The 1918 Act revised § 35 and added the false-statements provision relevant here.  40 Stat. 1015.

terms "with the intent of . . . defrauding" the Federal Government "should be construed as being used not merely in its primary sense of cheating the Government out of property or money, but also in the secondary sense of interfering with or obstructing one of its lawful governmental functions by deceitful and fraudulent means." *Id.*, at 346. The Court reasoned that if Congress had intended to prohibit all intentional deceit of the Federal Government, it would have used the broad language then employed in § 37 of the Penal Code, which "by its specific terms, extends broadly to every conspiracy 'to defraud the United States in any manner and for any purpose,' with no words of limitation whatsoever." *Ibid.*

Concerned that the 1918 Act, as thus narrowly construed, was insufficient to protect the authorized functions of federal agencies from a variety of deceptive practices, Congress undertook to amend the federal false-statements statute in 1934.[9] The 1934 provision finally enacted, however, rejected the language suggested in *Cohn*, and evidenced a conscious choice not to limit the prohibition to false statements made with specific intent to deceive the Federal Government.

The first attempt to amend the false-statements statute was unsuccessful. After debates in both Houses, Congress passed H. R. 8046. That bill provided in pertinent part:

> "[E]very person who *with the intent to defraud the United States* knowingly or willfully makes . . . any false or fraudulent . . . statement, . . . concerning or pertaining to any matter within the jurisdiction of any department, establishment, administration, agency, office, board, or commission of the United States, . . . shall be punished by . . . fine . . . or by imprisonment . . . , or by

---

[9] See H. R. Rep. No. 829, 73d Cong., 2d Sess., 1–2 (1934); 78 Cong. Rec. 3724 (1934).

both . . . ." 78 Cong. Rec. 3724 (1934) (emphasis added).[10]

President Roosevelt, however, vetoed the bill because it prohibited only those offenses already covered by the 1918 Act, while reducing the penalties.[11] This was hardly the measure needed to increase the protection of federal agencies from the variety of deceptive practices plaguing the New Deal administration.

To remedy the President's concerns, Congress quickly passed a second bill that broadened the scope of the federal false-statements statute by omitting the specific-intent language of the prior bill. The 1934 provision finally enacted into law provided in pertinent part:

"[W]hoever shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make . . . any false or fraudulent statements or representations, . . . in any matter within the juris-

---

[10] The Senate initially had proposed a similar bill (S. 2686), but that bill omitted the essential element of specific intent to defraud the United States. The Senate bill provided in relevant part:

"[E]very person who knowingly or willfully makes . . . any false or fraudulent . . . writing . . . pertaining to any . . . matter within the jurisdiction of any department or agency of the Federal Government . . . shall be punished . . . ." 78 Cong. Rec., at 2858–2859.

The Senate later withdrew its bill in favor of H. R. 8046, and the latter was passed by both Houses of Congress. Id., at 5746.

[11] The President's veto message read in part as follows:

"This bill [H. R. 8046], in effect, seeks to punish every person who, with intent to defraud the United States, knowingly or willfully makes . . . any false representation concerning any matter within the jurisdiction of any agency of the United States . . . .

"These offenses are already covered by existing law, which provides for more severe punishment than that proposed by the bill. [The 1918 Act] . . . provides for the punishment of all persons who, for the purpose and with the intent of cheating and swindling or defrauding the Government of the United States . . . knowingly and willfully . . . make[s] . . . any false or fraudulent statement or representation . . . .

"The bill is objectionable in that its result would be to reduce the punishment for certain frauds against the United States." Id., at 6778–6779.

diction of any department or agency of the United States . . . shall be fined . . . ." Act of June 18, 1934, ch. 587, 48 Stat. 996.

Noticeably lacking from this enactment is any requirement that the prohibited conduct be undertaken with specific intent *to deceive* the Federal Government, or with *actual knowledge* that false statements were made in a matter within federal agency jurisdiction. If Congress had intended to impose either requirement, it would have modified the prior bill by replacing the phrase "with intent to defraud the United States" with the phrase "with intent to deceive the United States,"[12] or by inserting the phrase "knowing such statements to be in any matter within the jurisdiction of any federal agency." That Congress did not include such language, either in the 1934 enactment or in the 1948 revision, provides convincing evidence that the statute does not require actual knowledge of federal involvement.[13]

Finally, there is no support in the legislative history for respondent's argument that the terms "knowingly and willfully" modify the phrase "in any matter within the jurisdiction of [a federal agency]." The terms "knowingly and willfully" appeared in the 1918 Act, but the phrase "in any matter within the jurisdiction of [a federal agency]" did not. It is clear, therefore, that in the 1918 Act the terms "know-

---

[12] See *United States* v. *Godwin*, 566 F. 2d 975, 976 (CA5 1978) ("Intent to deceive and intent to defraud are not synonymous. Deceive is to cause to believe the false or to mislead. Defraud is to deprive of some right, interest or property by deceit"). Accord, *United States* v. *Lichenstein*, 610 F. 2d 1272 (CA5), cert. denied, 447 U. S. 907 (1980).

[13] The dissent suggests that when Congress eliminated the phrase "with intent to defraud the United States," it really meant only to eliminate the word "defraud," but to retain the element of intent with respect to the United States. See *post*, at 81–82. If that had been the intention of Congress, it simply would have replaced the word "defraud" with the word "deceive" and retained the express-intent requirement. Congress did not do so, and this Court should not rewrite the statute in a way that Congress did not intend.

ingly and willfully" did not require proof of actual knowledge of federal involvement.   Nor does the legislative history suggest that by adding the jurisdictional prerequisite to the current provision Congress intended to extend the scope of those two terms.   The jurisdictional language was added to the current provision solely to limit the reach of the false-statements statute to matters of federal interest.

By requiring proof of specific intent to defraud the United States, Congress limited the 1918 prohibition to matters pertaining to federal concern.   There was no reason, therefore, to include the phrase "in any matter within the jurisdiction of [a federal agency]."   Once the specific-intent language of the 1918 Act was eliminated, however, the current jurisdictional phrase was necessary to ensure that application of the federal prohibition remained limited to issues of federal concern. There is no indication that the addition of this phrase was intended also to change the meaning of the terms "knowingly and willfully" to require proof of actual knowledge of federal involvement.   As this Court observed in *United States* v. *Bramblett*, 348 U. S. 503 (1955), the 1934 enactment "deleted all words as to purpose," and inserted the phrase "in any matter within the jurisdiction" of a federal agency "simply to compensate for the deleted language as to purpose—to indicate that not all falsifications but only those made to government organs were reached."   *Id.*, at 506, 507–508.

### III

Respondent argues that absent proof of actual knowledge of federal agency jurisdiction, § 1001 becomes a "trap for the unwary," imposing criminal sanctions on "wholly innocent conduct."   Whether or not respondent fairly may characterize the intentional and deliberate lies prohibited by the statute (and manifest in this case) as "wholly innocent conduct," this argument is not sufficient to overcome the express statutory language of § 1001.   Respondent does not argue that Congress lacks the power to impose criminal sanctions for

deliberately false statements submitted to a federal agency, regardless of whether the person who made such statements actually knew that they were being submitted to the Federal Government. Cf. *Feola*, 420 U. S., at 676, n. 9. That is precisely what Congress has done here. In the unlikely event that § 1001 could be the basis for imposing an unduly harsh result on those who intentionally make false statements to the Federal Government, it is for Congress and not this Court to amend the criminal statute.[14]

## IV

Both the plain language and the legislative history establish that proof of actual knowledge of federal agency jurisdiction is not required under § 1001. Accordingly, we reverse the decision of the Court of Appeals to the contrary.

*It is so ordered.*

JUSTICE REHNQUIST, with whom JUSTICE BRENNAN, JUSTICE STEVENS, and JUSTICE O'CONNOR join, dissenting.

It is common ground that in a prosecution for the making of false statements the Government must prove that the defendant actually knew that the statements were false at the

---

[14] In the context of this case, respondent's argument that § 1001 is a "trap for the unwary" is particularly misplaced. It is worth noting that the jury was instructed, without objection from the prosecution, that the Government must prove that respondent "knew or should have known" that his false statements were made within the jurisdiction of a federal agency.

As the Government did not object to the reasonable-foreseeability instruction, it is unnecessary for us to decide whether that instruction erroneously read a culpability requirement into the jurisdictional phrase. Moreover, the only question presented in this case is whether the Government must prove that the false statement was made with *actual* knowledge of federal agency jurisdiction. The jury's finding that federal agency jurisdiction was reasonably foreseeable by the defendant, combined with the requirement that the defendant had actual knowledge of the falsity of those statements, precludes the possibility that criminal penalties were imposed on the basis of innocent conduct.

time he made them. See *Bryson* v. *United States*, 396 U. S. 64, 68–70 (1969). The question presented here is whether the Government must also prove that the defendant actually knew that his statements were made in a matter within "the jurisdiction of any department or agency of the United States." The Court concludes that the plain language and the legislative history of 18 U. S. C. § 1001 conclusively establish that the statute is intended to reach false statements made without actual knowledge of federal involvement in the subject matter of the false statements. I cannot agree.

The Court nonetheless proceeds on the assumption that *some* lesser culpability standard is required in § 1001 prosecutions, but declines to decide what that lesser standard is. Even if I agreed with the Court that actual knowledge of federal involvement is not required here, I could not agree with the Court's disposition of this case because it reverses the Court of Appeals without determining for itself, or remanding for the lower court to determine, whether the jury instructions in respondent's case were proper. I think that our certiorari jurisdiction is best exercised to resolve conflicts in statutory construction, and not simply to decide whether a jury in a particular case was correctly charged as to the elements of the offense. But here the Court, in a remarkable display of left-footedness, accomplishes neither result: reading its opinion from beginning to end, one neither knows what the congressionally intended element of intent is, nor whether the jury was properly instructed in this case.

I

I think that in this case, "[a]fter 'seiz[ing] every thing from which aid can be derived,' *United States* v. *Fisher*, 2 Cranch 358, 386 (1805) (Marshall, C. J.), we are left with an ambiguous statute." *United States* v. *Bass*, 404 U. S. 336, 347 (1971). Notwithstanding the majority's repeated, but sparsely supported, assertions that the evidence of Congress' intent not to require actual knowledge is "convincing," and "unambiguou[s]," *ante*, at 69, and n. 7, 73, I believe that the

language and legislative history of § 1001 can provide "no more than a guess as to what Congress intended." *Ladner* v. *United States*, 358 U. S. 169, 178 (1958). I therefore think that the canon of statutory construction which requires that "ambiguity concerning the ambit of criminal statutes . . . be resolved in favor of lenity," *Rewis* v. *United States*, 401 U. S. 808, 812 (1971), is applicable here. Accordingly, I would affirm the Court of Appeals' conclusion that actual knowledge of federal involvement is a necessary element for conviction under § 1001.

The federal false-statements statute, 18 U. S. C. § 1001, provides that

> "[w]hoever, *in any matter within the jurisdiction of any department or agency of the United States* knowingly and willfully . . . makes any false, fictitious or fraudulent statements or representations, . . . shall be fined not more than $10,000 or imprisoned not more than five years, or both" (emphasis added).

The majority correctly begins its analysis with the language of the statute, see *United States* v. *Turkette*, 452 U. S. 576, 580 (1981), but in my view, it incorrectly concludes that the statutory language is unambiguous.

In drawing that conclusion, the Court does no more than point out that the "in any matter" language is placed at the beginning of the sentence in a phrase separate from the later phrase specifying the prohibited conduct. The Court then concludes that under any "natural reading" of the statute, it is clear that "knowingly and willfully" modify only the phrase specifying the prohibited conduct. *Ante*, at 69–70. Although "there is no errorless test for identifying or recognizing 'plain' or 'unambiguous' language" in a statute, *United States* v. *Turkette, supra*, at 580, the Court's reasoning here amounts to little more than simply pointing to the ambiguous phrases and proclaiming them clear. In my view, it is quite impossible to tell which phrases the terms "knowingly and willfully" modify, and the magic wand of *ipse dixit* does

78

nothing to resolve that ambiguity.   I agree with the Court
of Appeals that

> "neither the grammatical construction nor the punctua-
> tion of the statute indicates whether the 'knowingly and
> willfully' phrase modifies only the phrase 'makes any
> false, fictitious or fraudulent statements' *or* the broader
> phrase 'in any matter within the jurisdiction of any
> department or agency of the United States . . . makes
> any false, fictitious or fraudulent statements.'"   708
> F. 2d 365, 368 (CA9 1983) (emphasis in original).

Nor does the fact that the "in any matter" language
appears as an introductory phrase at the beginning of the
statute support the Court's conclusion that Congress did not
intend that phrase to be modified by the culpability language.
This is so because, before the 1948 revision of the statute—
a housekeeping overhaul intended to make no substantive
changes, *United States* v. *Bramblett*, 348 U. S. 503, 508
(1955)—the "in any matter" language in fact did *not* appear
as an introductory phrase in the statute.   Before the 1948
revision, the 1934 statute read as follows:

> "[W]hoever shall knowingly and willfully . . . make . . .
> any false or fraudulent statements or representations,
> . . . *in any matter within the jurisdiction of any depart-
> ment or agency of the United States . . .* shall be fined
> not more than \$10,000 or imprisoned not more than ten
> years, or both."   Act of June 18, 1934, ch. 587, 48 Stat.
> 996 (emphasis added).

Turning its attention, as it must, to that version of the stat-
ute, the Court again does no more than proclaim that the
most "natural reading," even of the 1934 statute, with the "in
any matter" language at the end rather than at the beginning
of the statute, is that "knowingly and willfully" modify only
the making of false statements.   *Ante,* at 69, n. 6.   But the
fact that the Court's "natural reading" has not seemed so

natural to the judges of the Ninth and Fifth Circuits, nor for that matter to me, indicates that the Court's reading, though certainly a plausible one, is not at all compelled by the statutory language. See 2A C. Sands, Sutherland on Statutory Construction § 46.04 (4th ed. 1973 and 1984 Cum. Supp.).

The legislative history is similarly unclear, but in my view, slightly more supportive of respondent's position than of the Court's position. It is in any event certainly not the kind of clear expression of legislative intent which is sufficient to explain an otherwise ambiguous statute and to overcome the application of the rule of lenity.

As the Court points out, the 1918 Act was the first federal prohibition on the making of false statements, and that Act included language requiring that the prohibited false statements be made "for the purpose and with the intent of cheating and swindling or defrauding the Government of the United States, or any department thereof." Act of Oct. 23, 1918, ch. 194, 40 Stat. 1015. All agree that that quoted language directly supports the Court of Appeals' holding here, Brief for United States 10, and the Court rests its entire holding on the absence of that language in the current statute. *Ante*, at 71–74.

Examination of the evolution of the statute, however, reveals only meager support for the Court's conclusion that Congress made "a conscious choice," *ante*, at 71, to eliminate the requirement of actual knowledge of federal involvement when it deleted the quoted language. To me, the change in the statutory language is as readily explained by Congress' desire to eliminate, *not* the intent requirement, but rather the "cheating and swindling or defrauding" language—language which this Court in *United States* v. *Cohn*, 270 U. S. 339, 346–347 (1926), had relied on in construing the 1918 Act narrowly to apply only to "the fraudulent causing of pecuniary or property loss" to the Federal Government.

In *Cohn* the Court expressly rejected the Government's argument that Congress intended the 1918 Act to go beyond

merely protecting the Government from being cheated out of its own money or property, and in addition intended it to protect the Government from the interference with and obstruction of any of its lawful functions by deceitful or fraudulent means. *Ibid.* The Court specifically focused on the use of the word "defraud" in the statute and concluded that even when used in connection with the words "cheating and swindling," the word "defraud" is only to be given its ordinary meaning of "fraudulent[ly] causing . . . pecuniary or property loss." *Ibid.*

The restricted scope of the 1918 Act resulting from the *Cohn* decision became a serious problem with the advent of the New Deal programs in the 1930's. Early in 1934 Secretary of the Interior Ickes contacted the Chairmen of the House and Senate Judiciary Committees and proposed a false-statements bill, intended to be broader than the 1918 Act, that would fill a gap he perceived in the present Criminal Code. See H. R. Rep. No. 829, 73d Cong., 2d Sess., 1–2 (1934); 78 Cong. Rec. 2858–2859 (1934). In particular the Secretary was concerned that there were at present no statutes outlawing, for example, the presentation of false documents and statements to the Department of the Interior in connection with the shipment of "hot oil," or to the Public Works Administration in connection with the transaction of business with that agency. See S. Rep. No. 1202, 73d Cong., 2d Sess., 1 (1934).

To address the Secretary's concerns, both the House and the Senate tried their hands at drafting a bill penalizing the making of false statements in connection with areas of federal agency concern. The House version, H. R. 8046, which was the version finally passed, provided:

> "[E]very person who *with intent to defraud the United States* knowingly or willfully makes . . . any false . . . statement, . . . concerning or pertaining to any matter within the jurisdiction of any department, establishment, administration, agency, office, board, or commis-

sion of the United States . . . shall be punished by a fine not exceeding $5,000 or by imprisonment for a term of not more than 5 years, or by both such fine and imprisonment." ˙ 78 Cong. Rec. 3724 (1934) (emphasis added).

The language of the bill and the House Report accompanying the bill made clear that H. R. 8046 required proof that the defendant actually knew that his fraudulent statements were directed at the Federal Government. The House Report explicitly noted that the "rights of the accused are protected by the provision that the act must be committed willfully and knowingly *and with intent to defraud the United States.*" H. R. Rep. No. 829, 73d Cong., 2d Sess., 2 (1934) (emphasis added). Statements made on the floor of both Houses during consideration of the bills indicate that the legislators understood that the purpose of the legislation was to deter those individuals "hovering over every department of the Government like obscene harpies, like foul buzzards" intending to deceive the Federal Government. 78 Cong. Rec. 2858 (1934); see *id.*, at 3724.

In spite of the noble goals and colorful metaphors that H. R. 8046 carried with it, President Roosevelt vetoed the bill for what seems now to be a rather obvious reason. In his veto message President Roosevelt pointed out that the statute as drafted was superfluous—it prohibited the very same conduct that was already prohibited by the 1918 Act and it even specified lesser penalties for that conduct. *Id.*, at 6778–6779. Indeed in comparing the bill with the 1918 Act, it is all too obvious that when Congress made the prohibition depend on an intent to *defraud*, it subjected the new statute to the same narrowing construction that the Court had given to the 1918 Act in *Cohn*—the very construction that had created the need for the new Act. Thus, to eliminate the President's problems with the bill, Congress simply enhanced the penalties provision and omitted the limiting language. That language, of course, was the "intent to *defraud* the United States" language. Another bill, H. R.

8912, was then passed by both Houses, 78 Cong. Rec. 12452 (1934), and, for purposes of this case, the statute assumed its present form, except for the phraseology changes made in the 1948 revision previously discussed.

Of course the Court is correct that Congress could have made its intent clearer by rewriting the limiting language so as to require an "intent to deceive" rather than an "intent to defraud" the Federal Government. See *ante*, at 73, and n. 13. But the fact still remains that nowhere in the admittedly sparse legislative history is there any indication that Congress intended the postveto changes to alter the culpability requirement that had been a part of the Act since 1918. Indeed in *United States* v. *Gilliland*, 312 U. S. 86, 94 (1941), we pointed out that the purpose of the amendment simply was to "omi[t] the limiting words which had been deemed to make the former provision applicable only to cases where pecuniary or property loss to the government had been caused" (footnote omitted). It seems to me highly unlikely that, without so much as a hint of explanation, Congress would have changed the statute from one intended to deter the perpetration of deliberate deceit on the Federal Government, to one intended to criminalize the making of even the most casual false statements so long as they turned out, unbeknownst to their maker, to be material to some federal agency function. The latter interpretation would substantially extend the scope of the statute even to reach, for example, false statements privately made to a neighbor if the neighbor then uses those statements in connection with his work for a federal agency.

Of course "[i]t is not unprecedented for Congress to enact [such] stringent legislation," *United States* v. *Feola*, 420 U. S. 671, 709 (1975) (Stewart, J., dissenting). But I cannot subscribe to the Court's interpretation of this statute in such a way as to "make a surprisingly broad range of unremarkable conduct a violation of federal law," *Williams* v. *United States*, 458 U. S. 279, 286 (1982), when the legislative history

simply "fails to evidence congressional awareness of the statute's claimed scope." *Id.*, at 290. Thus, I would hold that the rule of lenity is applicable in this case and that it requires the Government to prove that a defendant in a § 1001 prosecution had actual knowledge that his false statements were made in a matter within federal agency jurisdiction.

## II

Seemingly aware of the broad range of conduct that § 1001 could sweep within its scope under today's interpretation, the Court apparently does not hold that the words "in any matter within the jurisdiction of any department or agency of the United States" are jurisdictional words *only* and that *no* state of mind is required with respect to federal agency involvement. *Ante*, at 68–69, and n. 5. Instead, the Court suggests that some lesser state of mind may well be required in § 1001 prosecutions in order to prevent the statute from becoming a "trap for the unwary." *Ante*, at 75, n. 14. Accordingly, it expressly declines to decide whether the trial judge erred in its jury instructions in this case. *Ibid.*

In my view, the Court has simply disregarded the clearest, albeit not conclusive, evidence of legislative intent and then has invited lower courts to improvise a new state-of-mind requirement, almost out of thin air, in order to avoid the unfairness of the Court's decision today. I think that the Court's opinion will engender more confusion than it will resolve with respect to the culpability requirement in § 1001 cases not before the Court. And, unfortunately, it tells us absolutely nothing about whether respondent Yermian received a proper jury instruction in the case that *is* before the Court.

If the proper standard is something other than "actual knowledge" or "reasonable foreseeability," then respondent is entitled to a new trial and a proper instruction under that standard. The Court seems to believe that the question of the proper culpability requirement is not before it, *ante*, at 68, n. 5, 75, n. 14, because it apparently concludes that that

question is not embraced in the Governments' petition for certiorari asking for review of the Court of Appeals' holding with respect to the actual knowledge standard. See Pet. for Cert. I. Apparently the Court believes that respondent should have filed a cross-petition for certiorari if he wished to raise the issue of the proper standard and the propriety of the jury instructions in his case. But it is an elementary proposition that a "cross-petition is not necessary to enable a party to advance any ground, even one rejected or not raised below, in support of the judgment in his favor." R. Stern & E. Gressman, Supreme Court Practice 478 (5th ed. 1978); see *Dayton Board of Education* v. *Brinkman*, 433 U. S. 406, 419 (1977). Here, respondent's alternative argument for a "recklessness" standard, if accepted, mandates affirmance of the Court of Appeals' judgment below that he is entitled to a new trial. If the Court is unwilling to decide the issue itself, I believe that at a minimum it must remand for a decision on the issue, see *Dandridge* v. *Williams*, 397 U. S. 471, 475–476, n. 6 (1970) (dictum), rather than simply leaving the propriety of respondent's conviction in a state of limbo.

I respectfully dissent.