**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                        No. 96-4128

FRED BLOUNT, III,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
J. Calvitt Clarke, Jr., Senior District Judge.
(CR-95-138)

Argued: March 3, 1997

Decided: April 1, 1997

Before WILKINSON, Chief Judge, HALL, Circuit Judge, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Allan Donald Zaleski, WEISBERG & ZALESKI, P.C.,
Norfolk, Virginia, for Appellant. Ronald Glen Reel, Special
Assistant
United States Attorney, Norfolk, Virginia, for Appellee. **ON BRIEF:**
Helen F. Fahey, United States Attorney, Norfolk, Virginia, for
Appel-
lee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Fred Blount appeals his convictions, following a jury trial, of obstructing, delaying, and affecting commerce by aiding and abetting a robbery; conspiracy to obstruct, delay, and affect commerce by robbery; use of a firearm during and in relation to a crime of violence; and aiding and abetting the use of a firearm during a crime of violence. Finding no error, we affirm.

I.

On the evening of March 24, 1994, four men -- Anthony Hathaway, Charles Bond, Tony Saunders, and Fred Blount -- traveled in a car from North Carolina to Portsmouth, Virginia. Hathaway heard the others discuss robbing some drug dealers in Suffolk, Virginia. This plan was aborted; instead, the group wound up at a Pizza Hut in Portsmouth. Hathaway went inside first. As a pizza delivery-man approached the restaurant, Bond put a gun to his head and forced him inside, followed by Blount and Saunders. Blount was holding a semi-automatic pistol and Saunders had a sawed-off shotgun. The three armed men went behind the counter, pointing their guns at the employees. Bond demanded money. The manager was unable to open the safe, but he gave the robbers the money from the cash drawer (approximately $65). Hathaway, who had been standing at the door, fled when someone approached in the parking lot.

Someone yelled, "Police." An off-duty officer, Rolando Gonzalez, had happened upon the scene. He saw the men pointing guns inside. Saunders fired at Gonzalez; the shot made a hole in a window but did not hit its target. Blount then pointed his pistol at Gonzalez, but Gonzalez fired first. Blount was wounded. He dropped his gun and fled. The loaded pistol was recovered at the scene. The robbery and gunplay forced the Pizza Hut to close for the evening and to repair its damaged window.

All four perpetrators were soon apprehended. Blount gave a statement the following day, in which he admitted riding with the others to the Pizza Hut. He stated that Bond had instructed the others to follow his lead. He admitted directing the employees on where to go during the robbery. In a statement taken a week later, Blount admitted holding the gun in his hand inside the Pizza Hut and that the others had guns as well. Finally, he stated that once they were in the Pizza Hut, all four knew it was a robbery.

Charges were brought in state court. The other three prosecutions ended with convictions. Blount's did not. The charges against him were dismissed for lack of a speedy trial.

The United States then brought a four-count indictment against Blount only. The district court denied Blount's motion to dismiss certain counts as duplicitous or to force an election between the counts. At trial, with Hathaway's testimony and Blount's own confessions as the prime evidence, Blount was convicted on all counts. He received a five-year sentence for conspiracy, five concurrent years for robbery, ten consecutive years for his first 18 U.S.C. § 924(c) conviction, and twenty consecutive years for his second § 924(c) conviction.

Blount appeals.

II.

As he did below, Blount argues that he committed only two crimes, and so should not have four convictions. His arguments have no legal merit. The four counts are "separate" for double jeopardy purposes.

First of all, it is blackletter law that convictions for conspiracy to commit a crime and for the substantive commission of the crime do not constitute double jeopardy. Pinkerton v. United States, 328 U.S. 640, 643 (1946).

Counts three and four are both § 924(c) convictions, so they have the identical legal elements. However, the factual elements are entirely different. Count three charged Blount himself with carrying a semiautomatic pistol during the robbery. Count four charged Blount

with aiding and abetting the carrying of Bond's pistol and Saunders'
sawed-off shotgun. If a defendant commits the same crime twice, he
can be convicted twice.

III.

Blount next challenges the sufficiency of the evidence on his con-
spiracy conviction. We view the evidence in the light most favorable
to the government, and we must affirm the conviction if it is sup-
ported by substantial evidence. Glasser v. United States, 315 U.S. 60,
80 (1942); United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996)
(en banc), cert. denied, ___ S.Ct. ___ (1997). The evidence was more
than adequate. Besides Blount's own admission that everyone knew
what was going to happen, the activity during the robbery was clearly
concerted. It is not very likely that all four men spontaneously devel-
oped the same idea at the same time, and that through sheer happen-
stance they coordinated their actions toward the same end. It may well
be that the men originally planned some other robbery, and that the
Pizza Hut robbery was an impulsive change of plan; nevertheless, a
conspiracy need not have a long duration or be the product of exces-
sive forethought. This jury could rationally find, based on substantial
evidence before it, that these men agreed to do what they did.

IV.

Next, Blount argues that there was no evidence that he intended to
obstruct interstate commerce by robbing the Pizza Hut. Because a
commerce element merely provides a basis for federal jurisdiction,
rather than separates innocent from criminal conduct, it ordinarily has
no mens rea component. See United States v. Yermian, 468 U.S. 63,
68-70 (1984); United States v. Feola, 420 U.S. 671, 676-677 n.9
(1975). Indeed, this court has recently held, en banc and unanimously
on the point, that the "commerce" element of 18 U.S.C. § 922(g) is
jurisdictional only and has no mens rea component. United States v.
Langley, 62 F.3d 602, 606 (4th Cir. 1995) (en banc), cert. denied, 116
S.Ct. 797 (1996); id. at 618-619 (Phillips, J., concurring and dissent-
ing). We see nothing in the language of the robbery statute[1] to counsel

_____

**1** 18 U.S.C. § 1951.

a different result here.**2**

V.

Finally, Blount posits that the federal prosecution should not be permitted because it would not likely have been brought but for the botched state prosecution. The United States and Virginia are separate sovereigns, and a single act can transgress the laws of both. Because each sovereign's authority to prosecute is inherent and does not derive from power of the other, each may proceed as it sees fit, and successive prosecutions pose no double jeopardy problem. Heath v. Alabama, 474 U.S. 82, 88-89 (1985) (collecting cases).

Blount also refers to the Department of Justice's Petite policy (i.e. the United States will not ordinarily prosecute persons acquitted on analogous charges in state court, absent a compelling federal interest). This reference gets him nowhere. He was not acquitted on the merits in state court, so the policy does not even apply by its own terms. Moreover, Petite is an internal executive policy, not a law, and it confers no rights on a criminal defendant. United States v. Musgrove, 581 F.2d 406 (4th Cir. 1978).

The judgment of the district court is affirmed.

AFFIRMED

_____

**2** It bears noting that the government offered ample proof of the jurisdictional commerce element. First of all, Pizza Hut is a business. An employee of Pepsico Food Systems, which owns the Pizza Hut, Taco Bell, and KFC restaurant chains, testified that nearly all of the food items served at the Portsmouth outlet had traveled in interstate commerce. See United States v. Ramey, 24 F.3d 602 (4th Cir. 1994) (a private resi-

dence's receipt of electricity from an interstate power grid is an activity
affecting commerce), <u>cert. denied</u>, 115 S.Ct. 1838 (1995).

5