**UNITED STATES of America,**

v.

**Edwin Gerardo Figuero SEPULVEDA, Defendant.**

**Case No. 1:13–cr–00310–GBL–1.**

United States District Court, E.D. Virginia, Alexandria Division.

Signed Nov. 6, 2014.

Michael Ben'Ary, Stacey K. Luck, U.S. Attorney's Office, Alexandria, VA, for United States of America.

### MEMORANDUM OPINION AND ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Defendant Edwin Sepulveda's Motion for An Advance Ruling on Jury Instruction Defining the Mens Rea Applicable to Counts One, Three, and Four. (Doc. 120.) This case arises from the murder of DEA Special Agent James Terry Watson in Bogota, Colombia on June 20, 2013. The issue before the Court is whether 18 U.S.C. §§ 1116 and 1201 require a defendant to know that they are committing the offenses defined therein against an internationally protected person. The Court DENIES Defendant's motion because (1) the plain language of the statutes do not require a "knowingly" element, (2) the legislative history of the statutes evince no congressional intent to require that the defendant know the victim is an internationally protected person, and (3) the treaties the statutes were enacted to implement were designed to address the murder and kidnapping of internationally protected persons regardless of whether the defendant knew of the victim's status.

## I. BACKGROUND

On July 18, 2013, a federal grand jury returned an indictment charging six defendants with the murder of DEA Special Agent James Terry Watson. (Doc. 15 ¶ 1.) The murder allegedly occurred on June 20, 2013, in Bogota, Colombia in a taxi cab as part of a scheme to rob taxi riders. (Doc. 15 ¶ 17.) The indictment charged the six defendants, including Defendant Sepulveda, with: Count 1, murder of an internationally protected person and aiding and abetting that murder, in violation of 18 U.S.C. §§ 2, 1116(a), (c); Count 3, conspiracy to kidnap an internationally protected person, in violation of 18 U.S.C. § 1201(c); and Count 4, kidnapping an internationally protected person and aiding and abetting that kidnapping, in violation of 18 U.S.C. §§ 2, 1201. (Doc. 15.)

## II. DISCUSSION

The Court DENIES Defendant's motion because (1) the plain language of the statutes do not require a "knowingly" element, (2) the legislative history of the statutes evince no congressional intent to require that the defendant know the victim is an internationally protected person, and (3) the treaties the statutes were enacted to implement were designed to address the murder and kidnapping of internationally protected persons regardless of whether the defendant knew of the victim's status.

Defendant faces three charges: Count 1, murder of an internationally protected person and aiding and abetting that murder; Count 3, conspiracy to kidnap an internationally protected person; and Count 4, kidnapping of an internationally protected person and aiding and abetting in that kidnapping. Count 1, murder of an internationally protected person, is charged under 18 U.S.C. § 1116(a) and (c), which provide, in relevant part, as follows:

(a) Whoever kills or attempts to kill a[n] ... internationally protected person shall be punished as provided under [the provisions of law defining the categories of murder and manslaughter and the attendant penalties].

(c) If the victim of an offense under subsection (a) is an internationally protected person outside the United States, the United States may exercise jurisdiction over the offense if (1) the victim is a representative, officer, employee, or agent of the United States....

Count 3, conspiracy to kidnap an internationally protected person, and Count 4, kidnapping of an internationally protected person and aiding and abetting in that kidnapping, are charged under 18 U.S.C. §§ 2, 1201, the relevant provisions of which are as follows:

(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person ... when—...

(4) the person is ... an internationally protected person ...; or

(5) the person is among those officers and employees described in section 1114 of this title and any such act against the person is done while the person is engaged in, or on account of, the performance of official duties ...

(e) If the victim of an offense under subsection (a) is an internationally protected person outside the United States, the United States may exercise jurisdiction over the offense if (1) the victim is a representative, officer, employee, or agent of the United States....

Accordingly, all three counts turn on identical provisions of law (18 U.S.C. §§ 1116(c) and 1201(e)) conferring on this Court extraterritorial jurisdiction over certain offenses involving victims who are internationally protected persons. The intended scope of these provisions is the subject of Defendant's motion.

### 1. *Plain Language*

The Court holds that the plain language of the statutes do not include a "knowingly" requirement. When interpreting statutes, courts "must first and foremost strive to implement congressional intent by examining the plain language of the statute." *United States v. Passaro*, 577 F.3d 207, 213 (4th Cir.2009). "[I]f a disputed statutory provision has a plain and unambiguous meaning, then the interpretation giving effect to that meaning must be adopted and the statutory construction inquiry ends." *United States v. Mitchell*, 691 F.Supp.2d 665, 668 (E.D.Va. 2010) (citation omitted); *see Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). If the rele-

vant language is ambiguous, only then are courts "left to resolve that ambiguity" by considering the context in which the disputed language is used, weighing the purpose and structure of the statute in issue, and applying any applicable interpretive canons. *Robinson,* 519 U.S. at 345, 117 S.Ct. 843; *see United States v. Monsanto,* 491 U.S. 600, 611, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989). A review of both statutes shows that neither 18 U.S.C. § 1116 nor 18 U.S.C. § 1201 require a defendant to know that they are committing the offenses defined therein against an internationally protected person.

Defendant relies on the Supreme Court's decision in *Staples v. United States,* 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), to urge the Court to read a "knowingly" requirement into Counts 1, 3, and 4. (Doc. 120 at 6.) Defendant contends that "statutes that do not specify the mens rea required for conviction, such as 18 U.S.C. §§ 1116 and 1201, are as a matter of law read to have a 'knowingly' element." (*Id.*) (citing *Staples,* 511 U.S. 600, 114 S.Ct. 1793). In *Staples,* the Supreme Court considered a subsection of the National Firearms Act, 26 U.S.C. § 5861(d), that was silent on the requisite *mens rea.* 511 U.S. at 603, 114 S.Ct. 1793. Staples was charged with possessing an unregistered machine gun but argued that he did not know of certain after-market alterations made to the gun that qualified it as a machine gun. *Id.*

In *Staples* the Court held that the Government must prove that the defendant "knew of the features of his [gun] that brought it within the scope of the Act," even though the statute contained no explicit *mens rea* requirement. *Id.* at 619, 114 S.Ct. 1793. In so holding, the Court stated that it did not believe Congress intended to subject offenders to the "potentially harsh penalty" of up to 10 years'

imprisonment if "what they genuinely and reasonably believed was a conventional semi-automatic [weapon] turns out to have worn down into or been secretly modified to be a fully automatic weapon." *Id.* at 615–16, 114 S.Ct. 1793 (citations and internal quotation marks omitted). The Court also held that the *mens rea* requirement under a criminal statute is a question of law to be determined by courts.

> *We emphasize that our holding is a narrow one.* As in our prior cases, *our reasoning depends upon a common-sense evaluation of the nature of the particular device or substance Congress has subjected to regulation* and the expectations that individuals may legitimately have in dealing with the regulated items. In addition, we think that the penalty attached to § 5861(d) suggests that Congress did not intend to eliminate a *mens rea* requirement for violation of the section.

*Id.* at 619, 114 S.Ct. 1793 (emphasis added). Defendant asserts that *Staples* requires the Court to read a knowingly requirement into 18 U.S.C. §§ 1116 and 120. The Court declines to do so as *Staples* is distinguishable from this case for several reasons.

First, in *Staples* the Court placed great importance on the history of legal gun ownership in this country, declaring that Congress could not have intended to criminalize otherwise innocent conduct. *Id.* at 610, 114 S.Ct. 1793 ("[T]here is a long tradition of widespread lawful gun ownership by private individuals in this country."). The Court also compared the maximum penalty under § 5861(d)—ten years' imprisonment—with the actions it criminalized and found that Congress could not have intended such actions to be criminal without a defendant knowing that they were engaging in illegal acts. *See id.* at 614–15, 114 S.Ct. 1793 ("Here, there can

be little doubt that ... the Government's construction of the statute potentially would impose criminal sanctions on a class of persons whose mental state—ignorance of the characteristics of weapons in their possession—makes their actions entirely innocent."). That is in stark contrast to the offenses criminalized under 18 U.S.C. §§ 1116 and 1201—murder and kidnapping of an internationally protected person. While the penalties under each are "potentially harsh," *see* 18 U.S.C. §§ 1111, 1113, 1201, murder and kidnapping, *regardless of the status of the victim,* are not "traditionally lawful conduct." *Staples,* 511 U.S. at 618, 114 S.Ct. 1793. Instead, these crimes are so symptomatic of a defendant's "vicious will" that "the usual presumption that a defendant must know the facts that make his conduct illegal" should not apply. *Id.* at 617–19, 114 S.Ct. 1793 (citation and internal quotation marks omitted).

 Second, *Staples* did not involve the application of a "knowingly" requirement to a jurisdictional hook, which is precisely what Defendant is seeking here. Extending a *mens rea* requirement to the jurisdictional elements of a crime is directly contrary to long-standing Fourth Circuit precedent. In *United States v. Cooper,* the Fourth Circuit stated that "[i]t is well settled that mens rea requirements typically do not extend to the jurisdictional elements of a crime—that 'the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute.'" 482 F.3d 658, 664–65 (4th Cir.2007) (quoting *United States v. Feola,* 420 U.S. 671, 677 n. 9, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975)) (citing *United States v. Langley,* 62 F.3d 602, 605–06 (4th Cir.1995) (knowledge of firearm's interstate nexus not required); *United States v. Darby,* 37 F.3d 1059, 1067

(4th Cir.1994) (knowledge that threatening phone call was interstate not required); *United States v. Squires,* 581 F.2d 408, 410 (4th Cir.1978) (knowledge that transportation of counterfeit securities occurred interstate not required); *United States v. Green,* 544 F.2d 746, 747–48 (4th Cir.1976) (per curiam) (knowledge that dealer was federally licensed not required); *United States v. LeFaivre,* 507 F.2d 1288, 1297–98 (4th Cir.1974) (knowledge that checks were cashed using interstate facilities not required)). Other courts have held the same. *See, e.g., United States v. Yermian,* 468 U.S. 63, 74–75, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984) (knowledge that false statements were made to a federal officer not required); *United States v. Moyer,* 674 F.3d 192, 208–09 (3d Cir.2012) (knowledge that matter at issue in falsification of documents was within jurisdiction of the federal government not required); *United States v. Terrell,* 700 F.3d 755, 760 (5th Cir.2012) (knowledge of the "interstate nature of an instrument on which a depiction of child pornography is produced" not required); *United States v. Yielding,* 657 F.3d 688, 714 (8th Cir.2011) (knowledge that matter at issue in falsification of documents was within jurisdiction of the federal government not required).

In *Staples,* the Court observed that "an injury can amount to a crime only when inflicted by intention." *Id.* at 605, 114 S.Ct. 1793 (quoting *Morissette v. United States,* 342 U.S. 246, 250, 72 S.Ct. 240, 96 L.Ed. 288 (1952)) (internal quotation marks omitted). Thus, the application of a *mens rea* requirement to a statute is focused on the actual injury. Here the "injury" is the murder and kidnapping of Special Agent Watson; the jurisdictional hook is that the victim of these acts is an internationally protected person.

Defendant challenges the analysis and conclusions of the Supreme Court and the

Fourth Circuit regarding that application of *mens rea* to language in statutes constituting a jurisdictional hook. This Court declines to do so. Accordingly, because this case involves conduct that is historically illegal in nature, unlike *Staples,* and because Defendant seeks to apply a *mens rea* requirement to the jurisdictional hook of a statute, also unlike *Staples,* the Court declines to read *Staples* as broadly as Defendant urges.

Though it may appear that the Court's analysis of whether a defendant charged with either the murder or kidnapping of an internationally protected person must know of the victim's status is complete under *Cooper,* it appears to the Court that the question of whether to apply a *mens rea* requirement to those specific statutes, 18 U.S.C. §§ 1116 and 1201, is a matter of first impression in the Fourth Circuit. Accordingly, further analysis is warranted.

The Government directs the Court to the Modern Federal Jury Instructions for Murder or Manslaughter of a Foreign Official in support of its argument that the plain language of the statutes do not necessitate a reading—in of a knowingly requirement.

> The final element that the government must prove beyond a reasonable doubt is that on or about the date specific in the indictment, [name of victim] was a foreign official (or internationally protected person or official guest of the United States).
>
> I instruct you that a foreign official includes [specify position included in 18 U.S.C. 1116(b) ]. However, it is for you to determine if [the victim] held that title at the time in question.
>
> *The government does not have to prove that the defendant knew the identity of the victim or that the defendant knew that the victim was a foreign official.* The crime of murdering a foreign *official is designed to protect foreign officials acting in pursuit of their official functions,* and therefore, it is sufficient to satisfy this element for the government to prove that the victim was a foreign official at the time of the killing. Whether the defendant knew that the victim was a foreign official at the time is irrelevant to such a determination, and should not be considered by you.

2–41 MODERN FEDERAL JURY INSTRUCTIONS-CRIMINAL P 41.04 (emphasis added). Murder or manslaughter of a foreign official is also codified under 18 U.S.C. § 1116.[1] The Modern Federal Jury Instructions discuss what the crime of murdering a foreign official is designed to protect. *See id.* ("The crime of murdering a foreign official is designed to protect foreign officials acting in pursuit of their official functions...."). Though it is clear from the plain language of 18 U.S.C. §§ 1116 and 1201 that there is no "knowingly" requirement, the Court finds it prudent to examine the legislative history behind 18 U.S.C. §§ 1116 and 1201 to determine what Congress designed the statutes to protect.

### 2. *Legislative History*

The Court holds that the legislative history of both statutes demonstrates that Congress did not intend to require a defendant to know that the victim of the

---

1. The Government further argues that "the government's interpretation is consistent with Ninth Circuit's model jury instructions for the federal kidnapping statute which does not require knowledge of the victim's internationally protected person status. NINTH CIRCUIT MANUAL OF MODERN FEDERAL JURY INSTRUCTIONS-CRIMINAL SECTION 8.116 'Kidnapping—Foreign Official or Official Guest, 18 U.S.C. § 1201(a)(4).' " (Doc. 154 at 6.) The Court takes note of this argument but finds the MODERN FEDERAL JURY INSTRUCTIONS more persuasive on the issue.

crime is an internationally protected person in order to be convicted under either statute. Congress has made substantive changes to 18 U.S.C. §§ 1116 and 1201 on three separate occasions: (1) when the two statutes were first enacted in 1972; (2) when they were amended to apply to internationally protected persons in 1976; and (3) when Congress established extraterritorial jurisdiction for the two offenses in 1996. AH three instances demonstrate Congress' clear intent to apply 18 U.S.C. §§ 1116 and 1201 in a way that renders the defendant's knowledge of the victim's status of no consequence.

First, 18 U.S.C. §§ 1116 and 1201 were passed to criminalize the murder, manslaughter, kidnapping, assault, or intimidation of a "foreign official" or "official guest." *See* Pub. L. No. 92–539 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4136. Congress indicated that (1) the status of the victim was only a jurisdictional hook to give the federal government jurisdiction over each offense, and (2) knowledge of the victim's status was not required for a conviction under either statute. Regarding 18 U.S.C. § 1116 (murder), the legislative history provides that:

> Section 1116 *affords Federal jurisdiction* concurrent with State jurisdiction over these homicides which may be exercised whenever a homicide within the purview of the section is of sufficient interest to the United States to warrant Federal investigation or prosecution.

> Although the Government must indicate the status of the victim in prosecutions brought under this section for the purpose of establishing a jurisdictional basis, *knowledge of the victim's status on the part of his assailant is not an element of the offense which must be established at trial* if the person is indeed a foreign official.

S.Rᴇᴘ. No. 92–1105 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4136, 4325 (emphasis added). Regarding the kidnapping of a "foreign official" or "official guest," the Senate Report emphasized that the purpose of the "foreign official" language was to serve as a jurisdictional hook:

> Section 201 revises section 1201 of title 18, United States Code, to make a number of substantive changes in the present kidnapping law. *In lieu of the sole jurisdictional base* of transportation in interstate or foreign commerce (as under existing law); (2) the kidnapping occurs within the special maritime and territorial jurisdiction of the United States, or (3) in the special aircraft jurisdiction of the United States; or (4) *the victim is a foreign official within the purview of section 1116 of title 18.*

*Id.* (emphasis added). There is no statement by Congress that a defendant charged under the kidnapping provision must know of the victim's status. Instead, there *is* a statement by Congress that the victim's status was included in the statute to provide the federal government with a jurisdictional hook. *See id.* Thus, it is clear that Congress specifically criminalized the kidnapping and murder of a "foreign official" or "official guest" solely to provide the federal government with jurisdiction over the kidnapping and murder of those persons.

Second, in the 1976 amendments to 18 U.S.C. §§ 1116 and 1201 that protected "internationally protected persons," Congress, as evidenced by the plain language of the statutes, did not require that a defendant know of a victim's status as an internationally protected person. Defendant argues that the purpose of the amendments was to give effect to two international conventions that the United States government intended to ratify. (Doc. 120 at 11.) Defendant contends that

these amendments were aimed at covering crimes when: (1) militant activists and terrorists knew the internationally protected person status of their victim; and (2) the crimes were carried out *"because of* the victim's status." *(Id.)* (emphasis in original). Such a reading is not in accordance with the plain language of the statutes and the legislative history cited by Defendant does not support any finding that this reading was Congress' intent.

Third, in 1996, Congress amended 18 U.S.C. §§ 1116 and 1201 to provide extraterritorial jurisdiction. Prior to 1996, the statutes only permitted extraterritorial jurisdiction when the offender was located in the United States. The 1996 amendments broadened the jurisdictional reach of the statutes to also provide extraterritorial jurisdiction if the victim is a representative, officer, employee or agent of the United States or the offender is a national of the United States. *See* H.R.REP. No. 104–383, 84–85 (1995) (Conf. Rep.).

Defendant suggests that because the amendment to these statutes "was included in an overarching bill titled the "Anti–Terrorism and Effective Death Penalty Act of 1996," Pub. L. No. 104–132, 110 Stat. 1214 ("AEDPA"), the focus was on terrorism offenses and, therefore, the clarification must mean that Congress intended to only target crimes when the defendant knew the victim's status." *(Id.* at 17.) Defendant cites to no authority in the statutes' legislative history for such a reading. A reading of the plain language of the legislative history indicates that Congress amended the sections to provide a jurisdictional hook, not to alter the statute to change its pronouncement that knowledge of the victim's status—be it foreign official, guest thereof, or internationally protected person—was required for a conviction thereunder. *See* AEDPA.

Thus, the Court finds that the legislative history of both statutes evinces no intent of Congress to require that a defendant know that the victim is an internationally protected person in order to be convicted under the statute.

3. *Implementation of Treaty Obligations under Bond v. United States*

■ The Court holds that *Bond* does not require the Court to find that 18 U.S.C. §§ 1116 and 1201 have a "knowingly" requirement. In *Bond v. United States,* the Supreme Court held that when a statute is enacted to implement treaty obligations, the underlying treaty and the ills it was designed to address inform the interpretation of the statute and the scope of any criminal offenses it creates. — U.S. ——, 134 S.Ct. 2077, 189 L.Ed.2d 1 (2014). Defendant suggests that in this case, because the amendments to the statutes affording protection to internationally protected persons were enacted to implement treaty obligations, and the underlying treaties were designed to address ills related to crimes against internationally protected persons when their attackers knew of their status, this informs the interpretation of the statutes at bar and a "knowingly" requirement should thus be found to exist. This argument is unfounded.

The statutes at issue were amended pursuant to two treaty obligations: (1) the Convention on the Prevention and Punishment of Crimes Against Internationally Protected Persons, 1035 U.N.T.S. 167, 13 I.L.M. 41, *entered into force* Feb. 20, 1977 ("U.N.Convention"), and (2) the Convention to Prevent and Punish Acts of Terrorism Taking the Form of Crimes against Persons and Related Extortion that are of International Significance, Feb. 2, 1971, 27 U.S.T. 3949, 1438 U.N.T.S. 191 ("OAS Convention"). *See* H.R.REP. No. 94–1614,

at 1 (1976), *reprinted in* 1976 U.S.C.C.A.N. 4480, 4481. An examination of these conventions further shows that a "knowingly" requirement is not a part of either statute.

First, the U.N. Convention defines a protected person as any "representative or official of a State ... [that] is entitled pursuant to international law to special protection from *any attack* on his person, freedom, or dignity." U.N. Convention art. 1 (emphasis added). The convention does not direct its signatories to craft protections that turn on the status of a victim. To the contrary, its plain language states that internationally protected persons should be broadly protected from any attack. Second, the OAS Convention is even clearer on this point. Article 2 of the convention states that "[f]or the purposes of this convention, kidnapping, murder, and other assaults against the life or personal integrity of [an internationally protected person] ... shall be considered common crimes of international significance, *regardless of motive.*" OAS Convention art. 2 (emphasis added). Again, the convention drafters made it clear that in crafting an international protection for government agents, they did not seek to impose a specific knowledge requirement that would substantially limit the scope of the protection. Like the U.N. Convention drafters, the OAS Convention drafters crafted the protection to cover any attack.

Because neither convention directs its signatories to craft protections that turn on the status of a victim, the Court finds that 18 U.S.C. §§ 1116 and 1201 do not contain a "knowingly" requirement under *Bond.*

### III. CONCLUSION

The Court DENIES Defendant Edwin Sepulveda's Motion for An Advance Ruling on Jury Instruction Defining the Mens Rea Applicable to Counts One, Three, and

Four because (1) the plain language of the statutes do not include a "knowingly" requirement, (2) the legislative history of the statutes evince no congressional intent to require that the defendant know the victim is an internationally protected person, and (3) the treaties the statutes were enacted to implement were designed to address the murder and kidnapping of internationally protected persons regardless of whether the defendant knew of the victim's status. Accordingly, it is hereby

**ORDERED** that Defendant's Motion for An Advance Ruling on Jury Instruction Defining the Mens Rea Applicable to Counts One, Three, and Four (Doc. 120) is **DENIED.**

**IT IS SO ORDERED.**