**UNITED STATES of America**

v.

**James J. PICKETT, Defendant.**

**No. CR.02–014 (TPJ).**

United States District Court, District of Columbia.

May 7, 2002.

Robert C. Bowman, U.S. Attorney's Office, Washington, DC, for Plaintiff.

Harold Douglass Martin, II, Eli Gottesdiener, Gottesdiener Law Office, Washington, DC, for Defendant.

### MEMORANDUM AND ORDER

JACKSON, District Judge.

Officer James J. Pickett of the United States Capitol Police is awaiting trial on an indictment in which a grand jury has charged him with two violations of the United States Code in connection with events that occurred on November 7, 2001, while Pickett was on duty on the premises of the U.S. Capitol in Washington, D.C.

Count One charges that Pickett knowingly and willfully made material false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the legislative branch of the Government of the United States, namely the U.S. Capitol Police, in a note he placed at his duty station, in violation of 18 U.S.C. § 1001(a). Count Two charges Pickett with knowing and willful obstruction and interference with members of the U.S. Capitol Police who were engaged in the performance of their protective functions on November 7, 2001, in violation of 40 U.S.C. § 212a–2(d).

Defendant Pickett has moved to dismiss the indictment on the ground that neither count states a criminal charge against him upon which he can be obliged to stand trial.

No evidence has yet been taken. Consequently, no factual record exists. In their respective motions papers, however, the government and defendant make certain factual representations which they either adopt for purposes of the motion, or do not contest, and other pertinent facts also known to the Court are such as may be judicially noticed. Upon all such facts, and for the reasons stated, the Court will deny in part and grant in part defendant's motion to dismiss the indictment.

### I.

It is common and public knowledge that, beginning on or about October 15, 2001, crudely handwritten letters were received in the offices of members of the Congressional leadership which proved to contain a potent strain of anthrax bacillus transported in a white powdered or granular agent. The contamination the letters had spread in their wake as they worked their way through the postal system forced the government to close not only the recipients' offices but the office buildings themselves, and the postal facilities through which they had passed. (Several postal workers exposed to them died before their illnesses could be correctly diagnosed and timely treated.) Mail delivery to and from Capitol Hill was interrupted. Congressional office buildings required costly decontamination. Congressional workers endured weeks of apprehension awaiting the appearance of telltale symptoms of their own exposure to anthrax or anticipating the arrival of more infectious mail.

The Capitol Police, whose function it is to protect persons and property on Capitol Hill, including Congress (and in doing so to facilitate the orderly conduct of Congressional business), were confronted with a threat of unknown origins and indeterminate dimensions for which they had no precedent and no training with which to respond.

In the context of the foregoing facts, on November 7, 2001, less than a month after the first of the contaminated letters had arrived on Capitol Hill, Capitol Police Officer Karen Morgansen took over a desk at a security post beneath the Capitol on which she found a crudely handwritten note. The note was adjacent to a small pile of white powdered or granular material to which the note drew attention by an arrow pointing to it from the text. The text read:

PLEASE INHALE YES THIS COULD BE? CALL YOUR DOCTOR FOR FLU–SYMPTOMS. THIS IS A CAPITOL POLICE TRAINING EXERCIZE! [SIC] I HOPE YOU PASS! Officer Pickett had been the last occupant of the post. The white powdered or granular material was, in fact, a common sugar substitute product known as "Equal," not the anthrax-infested substance enclosed with the letters of several weeks before. It was known to Officer Pickett to be Equal, because it was Officer Pickett who had placed it next to the note. Officer Pickett had written the note as well, and left it to be found, presumably by a fellow officer, and he knew at least two of the statements in the note to be false: The material "could *not* be" [anthrax], as the note clearly implied, and the note and powder were not a "Capitol Police training exercise."

Officer Pickett asserts that the entire episode was a prank—a "bad joke," he now concedes—to which he quickly admitted when the note and powder were discovered, and supervisors were called. The supervisors readily recognized it as such, accepted his explanation, and gathered up the materials without taking any precautions for their own safety or alerting the component of the force equipped to handle hazardous material. No alarms were given, and, but for the disciplinary aftermath of which this prosecution is a part, the incident is closed for Capitol Police purposes.

## II.

Title 18 U.S.C. § 1001(a), provides, in pertinent part, that "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

(2) makes any materially false, fictitious, or fraudulent statement or representation; or

(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry...."

shall be guilty of a felony, known as "false statement." [1]

In its entirety, Count One of the indictment charges:

### Count One

On or about November 7, 2001, in the District of Columbia, the defendant, JAMES JOSEPH PICKETT, in a matter within the jurisdiction of the legislative branch of the Government of the United States, that is, the United States Capitol Police, did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations; that is, the defendant wrote a note and placed that writing at a United States Capitol Police security station with arrows directed to a nearby quantity of white powder, which writing stated—"PLEASE INHALE YES THIS COULD BE? CALL YOUR DOCTOR FOR FLU–SYMPTOMS. THIS IS A CAPITOL POLICE TRAINING EXERCIZE! [SIC] I HOPE YOU PASS!"—when the defendant knew the

---

1. To the extent § 1001(a) applies to matters "within the jurisdiction of the legislative branch," 18 U.S.C. § 1001(c) limits the application to:

"(1) administrative matters, including ... personnel or employment practices or support services ... or

(2) any investigation or review, conducted pursuant to the authority of any committee, subcommittee, commission, or office of the Congress...."

powder was not anthrax and his placement of the powder and the writing were not part of a United States Capitol Police training exercise.

(False Statement, in violation of Title 18, United States Code, Section 1001(a)).

Pickett contends that Count One of the indictment must be dismissed for failure to allege what he says are essential elements of the charge of false statement under 18 U.S.C. § 1001. First, he says, Count One does not specify any particular "administrative matter" or "investigation or review" duly authorized by Congress in connection with which his allegedly false statements were made. It also fails to identify any "false, fictitious or fraudulent" statement: the note never actually claims or states that the white powder accompanying it was anthrax, and the assertion concerning a purported "training exercise" could not be construed as false because it was part of a patently obvious "self-proclaiming joke." For the same reason he claims that the statements in the note could not be deemed "material" in that they had no tendency or ability to influence anyone because no rational person would have taken the statements seriously. Finally, defendant submits that Count One fails to allege that he had the specific criminal intent to deceive anyone.

■ An indictment is generally sufficient if it (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," and (2) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense [i.e., double jeopardy]." *See Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Russell v. United States,* 369 U.S. 749, 763, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *see also* Fed. R.Crim.P. 7(c)(1).

■ An indictment sufficiently charges the crime of false statement in violation of 18 U.S.C. § 1001 if it alleges that (1) defendant made a statement; (2) the statement was false, fictitious or fraudulent as far as the defendant knew; (3) the statement was made knowingly and willfully; (4) the statement was made in a matter within the jurisdiction of the executive, legislative, or judicial branch of the U.S. Government; and (5) the statement was material. *See* 18 U.S.C. § 1001; *see also United States v. Crop Growers Corp.,* 954 F.Supp. 335, 349 (D.D.C.1997).

■ Count One of the instant indictment is thus obviously valid on its face, and "[a]n indictment returned by a legally constituted and unbiased grand jury ..., if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956). The specific infirmities Pickett perceives in Count One are, at best for his purposes, potential failures of the government's proof at trial which might entitle him to a judgment of acquittal on motion on Count One at the close of the government's case. They do not, however, render Count One of the indictment defective.

The essential nature of defendant's argument for dismissal is, simply, that a "hoax," even one perpetrated by an intentionally erroneous utterance, has never (except in the case of threats to blow up aircraft)[2] been made a criminal offense by Congress. The crime of false statement is, he says, a crime of deceit, and in Officer Pickett's case the absence of any evidence on his part of an intent to delude anyone into believing that his duty station was contaminated with anthrax, coupled with abundant evidence that no one on the Capitol Police force (let alone anyone else in

---

**2.** *See* 18 U.S.C. § 35; *United States v. Hassou-* *neh,* 199 F.3d 175 (4th Cir.2000).

the legislative branch) ever believed that it was, removes his conduct from the ambit of 18 U.S.C. § 1001. To that end he cites what he says is a majority of circuit courts which have held that the willful element of the crime of false statement requires proof that the defendant intended to deceive someone in making his false statements. *See United States v. Shah,* 44 F.3d 285, 289 (5th Cir.1995) (false statement must be "one ... made with an intent to deceive and mislead"); *United States v. Corsino,* 812 F.2d 26, 29 (1st Cir.1987) (same); *United States v. White,* 765 F.2d 1469, 1472 (11th Cir.1985) (same); and *United States v. Markey,* 693 F.2d 594, 596 (6th Cir.1982) (same).

The language and structure of the statute, however, suggest otherwise, as does other apposite judicial authority from the D.C. Circuit. Subparagraph (1) of § 1001(a) addresses those false statements meant to deceive or conceal; subparagraphs (2) and (3) relate to materially false utterances, both oral and written, that may be harmful in other ways. A false statement may be as disruptive of the orderly functioning of the legislative branch as one of deliberate deception if its purpose or effect is to cause fright or confusion. A false alarm of "fire in a theater ... causing a panic" is as impermissible an utterance today as it was in Justice Holmes's day.[3]

Moreover, the Supreme Court has held that under § 1001 the government need not prove that the defendant intended to deceive an agency of the "federal government." *See United States v. Yermian,* 468 U.S. 63, 69–75, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984). Although the Supreme Court has apparently never squarely addressed the issue as to whether the willfulness element of the crime of false statement requires proof that the defendant had the specific intent to deceive *someone,* the

D.C. Circuit has stated that "[t]he natural reading of ... 1001 is this: the government may show *mens rea* simply by proof ... that the defendant knew that the statements to be made were false." *United States v. Hsia,* 176 F.3d 517, 522 (D.C.Cir.1999); *accord United States v. Trie,* 21 F.Supp.2d 7, 15 (D.D.C.1998) ("government must prove that a criminal defendant knew that statement at issue was false and that he or she willfully made the false statement"); *Crop Growers,* 954 F.Supp. at 349 (listing willfulness element without further mentioning any requirement that defendant have intended to deceive someone).

The Court concludes that Count One sufficiently charges defendant Pickett with the crime of false statements under 18 U.S.C. § 1001(a), and the motion to dismiss the indictment will be denied as to Count One.

### III.

The defendant also seeks to dismiss Count Two of the indictment charging him with knowing and willful obstruction and interference with the Capitol Police in the performance of their duties. For purposes of its analysis, the Court is limited to a consideration of the factual allegations set forth in the count at issue. *See U.S. v. Baker,* 262 F.Supp. 657, 681 (D.D.C.1966). Count Two does not further elaborate on the nature of Pickett's obstructive conduct. It also does not incorporate by reference any of the factual allegations of Count One; it merely reiterates the statutory language of the offense it purports to charge. *See* 40 U.S.C. § 212a–2(d).

Fed.R.Crim.P. 7(c)(1) requires an indictment to set forth "a plain, concise and definite written statement of the essential facts constituting the offense charged."

---

**3.** *Schenck v. United States,* 249 U.S. 47, 52, 39    S.Ct. 247, 63 L.Ed. 470 (1919).

An indictment is insufficient if it does not enable the defendant "to plead [either] an acquittal or conviction in bar of future prosecutions for the same offense." *See Hamling*, 418 U.S. at 117, 94 S.Ct. 2887.

 It may well be that the grand jury intended the conduct charged in Count One to constitute the substance of the offense it sought to charge in Count Two. It did not, however, say so, and neither this Court nor a trial jury may be permitted to guess at the grand jury's unexpressed intent. *See Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *see also United States v. Nance*, 533 F.2d 699, 701 (D.C.Cir.1976). Nor could any other court considering the identical charge in a future indictment, say, upon a subsequent prosecution of Officer Pickett, that the jury's verdict in this case operated as a bar to that prosecution.

Count Two will be dismissed.

For the foregoing reasons it is, this 7th day of May, 2002,

ORDERED, that defendant's motion to dismiss the indictment [8] is denied in part and granted in part; and it is

FURTHER ORDERED, that Count Two of the indictment returned January 11, 2002, is dismissed without prejudice; and it is

FURTHER ORDERED, that this case is scheduled for a status and scheduling conference on May 21, 2002, at 9:30 a.m. to set a date for trial on Count One.