**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Dorothy SCHANKOWSKI,**
**Defendant-Appellant.**

**No. 85–1208.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 12, 1985.

Decided Feb. 4, 1986.

Leroy T. Soles, Federal Defender, Detroit, Mich., Jill Leslie Price, argued, Kenneth R. Sasse, for defendant-appellant.

Robert Monk, Asst. U.S. Atty., argued, Detroit, Mich., for plaintiff-appellee.

Before LIVELY, Chief Judge; CONTIE, Circuit Judge; and JOHNSTONE, Chief Judge.[*]

LIVELY, Chief Judge.

In this case we must decide whether the statute which makes obstruction of the mails a crime requires a showing that the defendant knew that her acts would result in obstructing or retarding the passage of mail. The statute is 18 U.S.C. § 1701 (1982):

> Whoever knowingly and willfully obstructs or retards the passage of the mail, or any carrier or conveyance carrying the mail, shall be fined not more than $100 or imprisoned not more than six months, or both.

## I.

Four checks issued by the Michigan Department of Social Services were stolen before they reached the persons to whom they had been mailed. The checks were cashed by Walter Walock. His endorsement followed an endorsement on each check purporting to be that of the payee and three of the checks also contained an endorsement by Dorothy Fogoros, the defendant's maiden name. A handwriting expert testified that the defendant had written her own name and two of the other endorsements on the checks and that she might have written two additional endorsements. Defendant's fingerprints did not appear on any of the checks.

The only evidence as to how the defendant came into possession of the checks was the testimony of a postal inspector that Schankowski said the checks were brought to her by a man and woman she had met through a friend. There was no showing that the defendant ever saw the envelopes in which the checks were mailed. One postal inspector stated that the defendant told him she had cashed the checks, "[k]nowing them to be stolen from the mail." This evidence was weakened by the fact that the witness admitted on cross-examination that he had not recorded the statement in his notes of the interview. Also, another inspector who was present during the questioning did not mention the defendant's purported admission in his testimony.

The defendant presented no evidence, but her counsel argued in support of her motion for acquittal that the government had failed to prove that the defendant knew at the time the checks were in her possession "that they had been taken from the mail and that, by her act or acts, she had obstructed and retarded the flow of that mail." After the district court denied her motion for acquittal the defendant requested an "actual knowledge" instruction:

> Actual knowledge by the Defendant that she was obstructing and retarding the passage of the United States mail is an essential element of the offense charged.

The district court refused to give this instruction, but charged:

> The Defendant must have acted knowingly and willfully.

[*] The Honorable Edward H. Johnstone, Chief Judge, United States District Court for the Western District of Kentucky, sitting by designation.

An act is done knowingly if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

The purpose of adding the word "knowingly" is to ensure that no one will be convicted for an act because of mistake, accident or other innocent reason.

With respect to the offense charged in the case, specific intent must be proven beyond a reasonable doubt before there can be a conviction.

The word "willfully" means that an act was committed voluntarily and purposely, with the specific intent to disobey or disregard the law.

In arguing for inclusion of the requested instruction in the jury charge counsel for the defendant maintained that in the present case there was no evidence that the defendant knew that the checks came from the mail. In many cases under § 1701 the "passage of the mail" element is uncontested because it is obvious from the evidence that use of the mails is involved. That is the situation where a defendant is shown to have removed mail from a mail box or to have possessed mailed matter while still in the mailing envelope. In this case, other than the testimony of the postal inspector, only the endorsements connected the defendant to the checks and they could have been made under circumstances where there was no indication that the checks had ever been mailed.

The jury found the defendant guilty of four violations of § 1701. The district court sentenced the defendant to six months imprisonment, suspended, and placed her on probation for two months.

## II.

The statute prohibiting obstruction of the passage of mail is one of several laws designed to preserve the integrity of the postal system. 18 U.S.C. §§ 1700–1710 (1982). Some of the statutes concern interference with mail by members of the public while others are aimed at dereliction of duty by postal employees. The statute presently under consideration, § 1701, cre-

ates a misdemeanor, while its companion, § 1702, makes obstruction of correspondence "with design" a felony. Section 1701 is the latest in a long line of statutes dealing with obstruction of the mails. The act of Congress of March 3, 1825 provided in part "that, if any person shall knowingly and wilfully obstruct or retard the passage of the mail, or of any driver or carrier, or of any horse or carriage carrying the same, he shall, upon conviction, for every such offense, pay a fine not exceeding one hundred dollars...."

The Supreme Court considered the 1825 act in *United States v. Kirby*, 74 U.S. (7 Wall.) 482, 19 L.Ed. 278 (1868). In that case a sheriff executed an arrest warrant on a postal employee while the employee was engaged in postal duties. The sheriff and members of his posse were indicted for willfully obstructing and retarding the passage of mail. In holding that the statute did not apply to the defendants' acts the Court wrote:

> The statute of Congress by its terms applies only to persons who "knowingly and wilfully" obstruct or retard the passage of the mail, or of its carrier; *that is, to those who know that the acts performed will have that effect,* and perform them with the intention that such shall be their operation.

*Id.* 74 U.S. at 485–86 (emphasis added). The Court also held that the required intent will be imputed when the acts which constitute the obstruction are unlawful in themselves. *Id.* Many subsequent cases have dealt with intent rather than knowledge and have cited *Kirby* to support the imputation of intent from the illegality of the act. *E.g., United States v. Kane*, 19 F. 42, 44 (D.Ore.1884); *United States v. Claypool*, 14 F. 127, 128 (W.D.Mo.1882). At least two of these early cases also cited *Kirby* for its other holding—that to be guilty under the statute the defendant must have known that his acts would have the effect of obstructing the mail. *United States v. Woodward*, 44 F. 592 (E.D.S.C. 1891); *United States v. Claypool*, supra. But cf. *United States v. Cassidy*, 67 F. 698

(N.D.Cal.1895), and *United States v. Debs,* 65 F. 210 (N.D.Ill.1895), two cases arising out of the Pullman strike that did not require proof of actual knowledge.

### III.

Under § 1701 there are three elements of the offense: (1) obstructing or retarding, (2) passage of the mails, (3) willfully and knowingly. *United States v. Fleming,* 479 F.2d 56, 57 (10th Cir.1973); *United States v. Takacs,* 344 F.Supp. 947, 949 (W.D.Okla. 1972). There appears to be no dispute that § 1701 requires specific intent to commit a wrongful act. However, later cases have contained little discussion of the issue in this case—whether the person committing the act must know that her actions will have the effect of obstructing or retarding the mails. The key to our decision is determining the meaning of "knowingly and willfully" as used in § 1701.

The Supreme Court has recently examined the meaning of "knowingly" and "knowingly and willfully" as used in two criminal statutes. *Liparota v. United States,* — U.S. ——, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), involved the "knowingly" requirement of 7 U.S.C. § 2024(b) (1982) which governs food stamp fraud. This statute provides in part:

(1) Subject to the provisions of paragraph (2) of this subsection, whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by this chapter or the regulations issued pursuant to this chapter shall, if such coupons or authorization cards are of a value of $100 or more, be guilty of a felony,

\* \* \* \* \* \*

or, if such coupons or authorization cards are of a value of less than $100, shall be guilty of a misdemeanor.

The district court gave an instruction in *Liparota* similar to the one given by the district court in the present case. The court charged the jury that " 'knowingly' ... means that the defendant realized what he was doing, and was aware of the nature of his conduct, and did not act through ignorance, mistake or accident." The defendant objected that this instruction merely required the jury to find that he knew he was acquiring or possessing foodstamps without requiring proof that he knew he was acting unlawfully. The Supreme Court found little guidance in the words themselves and concluded that both interpretations—that of the government and of the defendant—could be supported. In accepting the defendant's argument the Court stated:

Absent indication of contrary purpose or legislative history of the statute, we believe that § 2024(b) requires a showing that the defendant knew his conduct to be unauthorized by statute or regulations.

105 S.Ct. at 2088 (footnote omitted). This court anticipated *Liparota* in *United States v. Pollard,* 724 F.2d 1438 (1984).

In *United States v. Yermian,* 468 U.S. 63, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984), the defendant was convicted of making a false statement in a matter within the jurisdiction of a federal agency in violation of 18 U.S.C. § 1001 (1982). He made false answers on a questionaire he supplied his employer in order to obtain a Department of Defense security clearance. The defendant admitted he knew the answers were false, but claimed he did not know that the answers would be transmitted to a government agency. The district court refused his requested instruction that he could not be convicted unless the prosecution proved beyond a reasonable doubt that he knew the statements were being made to the Department of Defense.

In affirming the conviction the Supreme Court found that Congress intended "knowingly and willfully" to modify only "the making of 'false, fictitious or fraudulent statements,' and not the predicate circumstance that those statements be made in a matter within the jurisdiction of a federal agency." 104 S.Ct. at 2940 (footnote omitted). The placement of "knowingly and willfully" in 18 U.S.C. § 1001 was one of the factors which led the Supreme

Court to conclude that these words modify only the prohibited act, not the "predicate circumstance." The words are placed after reference to a government agency and immediately before "falsifies":

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1001.

Without the "predicate circumstance" the act of making a false statement would not invoke federal jurisdiction. The prohibited act may be a state offense, but becomes a federal offense only if the circumstances involve a government agency. That is not true of § 1701. The prohibited act is only unlawful if the mails are involved. There can be no separation of the act from the predicate circumstance. Unless mail is involved there is nothing to prohibit, and "knowingly and willfully" are placed so as to modify the entire evil which the statute seeks to prevent—obstruction or retardation of the passage of mail. We conclude that "knowingly and willfully" in § 1701 is a statutory provision which establishes federal jurisdiction and is an element of the offense as well. The Supreme Court distinguished statutory provisions that are jurisdictional only from those which have two purposes in United States v. Feola, 420 U.S. 671, 676 n. 9, 95 S.Ct. 1255, 1260 n. 9, 43 L.Ed.2d 541 (1975):

> Labeling a requirement "jurisdictional" does not necessarily mean, of course, that the requirement is not an element of the offense Congress intended to describe and to punish. Indeed, a requirement is sufficient to confer jurisdiction on the federal courts for what otherwise are state crimes precisely because it implicates factors that are an appropriate

subject for federal concern. With respect to the present case, for example, a mere general policy of deterring assaults would probably prove to be an undesirable or insufficient basis for federal jurisdiction; but where Congress seeks to protect the integrity of federal functions and the safety of federal officers, the interest is sufficient to warrant federal involvement. The significance of labeling a statutory requirement as "jurisdictional" is not that the requirement is viewed as outside the scope of the evil Congress intended to forestall, but merely that the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute. The question, then, is not whether the requirement is jurisdictional, but whether it is jurisdictional only.

### IV.

■ The language of § 1701 suffers from the same ambiguity as that considered by the Supreme Court in *Liparota,* where *Yermian* was distinguished in part on the basis of the Court's finding that the language in 18 U.S.C. § 1001 is unambiguous. We conclude that § 1701 requires a showing that the defendant knew that the effect of her actions would be to obstruct the mail. It was not enough to show that the checks had been mailed; in order to avoid a judgment of acquittal some evidence was required that the defendant knew the checks had been mailed. This is precisely the argument made by the defendant, first for acquittal at the close of the government's case, and also in support of her requested instruction when the motion for acquittal was denied.

■ The district court was in a very difficult position in this case. The statute is ambiguous and there is no helpful legislative history. Though counsel for the defendant did articulate the position which we have adopted, he presented it along with other unsupportable arguments which clouded the issue for the district court. For example, counsel argued that the

government was required to prove that the defendant had either stolen the checks from the mail or knew they were stolen from the mail. It is clear that theft is not an element of the offense described in § 1701. In addition, defense counsel did not cite *United States v. Kirby*, the only Supreme Court decision dealing directly with the issue in this case, and finally, the district court did not have the benefit of the decision in *Liparota*, whose reasoning we have found persuasive.

The evidence of the postal inspector concerning the defendant's purported admission was sufficient to make a jury issue on the question of whether she knew that her acts had obstructed or retarded the passage of mail. However, the defendant was entitled to an instruction that "knowingly and willfully" as used in § 1701 requires the government to prove beyond a reasonable doubt that the defendant knew that her acts had this effect.

The judgment of the district court is reversed, and the case is remanded for a new trial.