**UNITED STATES of America**

v.

**Anthony WOODEN, Defendant.**

**No. 92 Cr. 0092 (RWS).**

United States District Court, S.D. New York.

Oct. 4, 1993.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City, for United States of America; Daniel J. Fetterman, Asst. U.S. Atty., of counsel.

The Legal Aid Soc., Federal Defender Services Appeals Unit, New York City, for defendant; Darrell B. Fields, of counsel.

*OPINION*

SWEET, District Judge.

Defendant Anthony Wooden has appealed, pursuant to Fed.R.Crim.Proc. 58(g)(2)(B) and 18 U.S.C. § 3402, from the December 31, 1992 judgment of United States Magistrate Judge Kathleen A. Roberts for the Southern District of New York. For the reasons set forth below, the judgment is affirmed and the appeal dismissed.

*Prior Proceedings*

Information 92 Cr. 712 was filed on August 22, 1992, charging defendant Anthony Wooden ("Wooden") with unlawfully, wilfully, and knowingly obstructing and retarding the passage of mail, in violation of Title 18 U.S.C. § 1701.

A nonjury trial commenced on December 21, 1992, and concluded on December 23, 1992. On December 31, 1992, in a written opinion, Magistrate Roberts found Wooden guilty. On March 12, 1992, Magistrate Roberts sentenced Wooden to two years of probation, 150 hours of community service, and a special assessment of $10.00. Notice of Appeal was filed on March 16, 1993, and the appeal heard on September 8, 1993.

*Facts*

Anthony Wooden, a letter carrier at the Fordham Station in the Bronx, was assigned to Route 15 from September 1991 through March 1992. On February 24, 1993, Wooden became sick and left work early. A coworker, Wayne Moshensky ("Moshensky"), was directed to finish delivering the mail on Wooden's route. In the course of completing Wooden's route, Moshensky picked up two bags of mail at the relay box at 2875 Bainbridge Avenue. Moshensky delivered the mail in the first bag, but returned to Fordham station upon discovering the second bag's mail was improperly sequenced for delivery. Moshensky turned the bag over to Larry Passiatore ("Passiatore"), the manager of the Fordham Station Post Office. Another postal worker, Rafael Ruiz ("Ruiz"), also returned with a bag of undelivered mail from Wooden's mail route.

Passiatore, upon discovering that the mail was old and unsorted, reported Wooden to the Postal Inspection Service. The next day, February 25, 1992, Postal Inspector Andrew O'Shaughnessy ("O'Shaughnessy") went to investigate the situation at Fordham Station. Inside the relay bags, O'Shaughnessy found mail with postmarks from September through November, 1991 and several parcels with postmarks from December, 1991. The next day, O'Shaughnessy found still more stale mail in relay boxes along Wooden's route. All told, between February 24 and 26, 1992, approximately 950 pieces of variously classed mail were discovered in relay boxes on Wooden's mail route dating as far back as September, 1991. Many pieces were either unsorted, unsequenced for delivery or old.

On March 3, 1992, O'Shaughnessy questioned Wooden about the undelivered mail. According to O'Shaughnessy, Wooden stated that he "took the mail and put it in relay boxes," believing that he would "eventually" be able to "deliver it to addresses, return it or, you know, whatever it required." (Appellant Br. at 6). Wooden wrote out and signed a statement that he had been "unable to handle [his] volume of mail properly" and "would put the mail in relay boxes on [his] route with the intention of delivering it at a later time, but as days went by the situation became worse." *Id.*

At trial, testimony concerning mismanagement of the Fordham Post Office was entered into the record. Mr. Humberto Montalbo ("Montalbo"), one of Wooden's co-workers, testified that Wooden's desk was always backed up with work and that he often heard arguments between Wooden and the station's management about his workload. Both Montalbo and Mr. Nieves, a Fordham Post Office delivery driver, testified that management had previously directed postal workers to drive backlogged mail around during postal inspections. Further, Passiatore admitted that he personally had requested postal workers to load mail into trucks and drive it around during scheduled postal inspections. Nevertheless, Passiatore testified that he never told Wooden to put mail in relay boxes rather than deliver it to the public. Passiatore acknowledged that Wooden complained about the volume of mail on his route and that his predecessor worked "off the clock" in order to keep up with the route's heavy volume. Accordingly, Passiatore assigned other mail workers to assist Wooden with his work load.

*Discussion*

Rule 58 of the Federal Rules of Criminal Procedure provides for the following scope of appeal from a Magistrate's judgment:

> The defendant shall not be entitled to a trial de novo by a judge of the district court. The scope of the appeal shall be

the same as an appeal from a judgment of a district court to a court of appeals.

Fed.R.Crim.P. 58(g)(2)(D).

■ The Second Circuit has frequently stated the standards by which sufficiency claims must be assessed on appeal. *See United States v. Salerno,* 868 F.2d 524, 530 (2d Cir.), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989). A defendant challenging the sufficiency of the evidence "bears a very heavy burden." *United States v. Diaz,* 878 F.2d 608, 611 (2nd Cir.) (quoting *United States v. Chang An–Lo,* 851 F.2d 547, 553 (2d Cir.), *cert. denied,* 488 U.S. 966, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988)), *cert. denied* 493 U.S. 993, 110 S.Ct. 543, 107 L.Ed.2d 540 (1989). The reviewing court must "uphold the conviction if, from the inferences reasonably drawn, the [factfinder] might fairly have concluded that the defendant was guilty beyond a reasonable doubt." *United States v. Gallo,* 863 F.2d 185, 189 (2d Cir. 1988), *cert. denied,* 489 U.S. 1083, 109 S.Ct. 1539, 103 L.Ed.2d 843 (1989).

■ In addition, the evidence must be viewed "in the light most favorable to the Government," *United States v. Roman,* 870 F.2d 65, 71 (2d Cir.1989), and a reviewing court must draw all reasonable inferences, and resolve all issues of credibility in favor of the verdict. *United States v. Chang An–Lo,* 851 F.2d at 554. Furthermore, pieces of evidence must be viewed "not in isolation but in conjunction." *United States v. Carson,* 702 F.2d 351, 362 (2d Cir.), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983). To be sufficient, the evidence need not have excluded every possible hypothesis of innocence. *United States v. Chang An–Lo,* 851 F.2d at 554. Rather, if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," the conviction must be upheld. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ Applying these axioms to the facts of this case, the evidence was sufficient to support Magistrate Roberts' guilty verdict on the mail obstruction charge. Title 18 U.S.C. § 1701 provides a criminal penalty for mail obstruction as follows:

Whoever knowingly and willfully obstructs or retards the passage of the mail, or any carrier or conveyance carrying the mail, shall be fined not more than $100 or imprisoned not more than six months, or both.

The three elements of this offense are: (1) obstructing or retarding, (2) the passage of the mails, (3) willfully and knowingly. *See United States v. Schankowski,* 782 F.2d 628, 631 (6th Cir.1986); *United States v. Fleming,* 479 F.2d 56, 57 (10th Cir.1973).

■ The Magistrate's determination was based on direct evidence and credibility determinations with respect to live witnesses. In finding Wooden guilty as charged in the information, she stated:

I found the defendant's testimony at trial not credible; rather, I find defendant's statement to the Postal Inspector credible and consistent with all the evidence in the case. In sum, I find that at some point or points, the defendant took upon himself to send or put mail in a relay box that he was unable or unwilling to process in a timely manner, and in so doing violated 18 U.S.C. § 1701.

Viewing the evidence in the light most favorable to the government, and drawing all inferences in favor of the verdict, the evidence shows that nearly 950 pieces of mail were discovered in five different relay boxes on Wooden's route, and that much of this mail was several months stale, improperly sorted, or not in sequence for delivery.

The defense argues that in order to sustain a conviction under § 1701 specific intent to obstruct or retard the mail must be demonstrated. In effect, Wooden contends the evidence merely demonstrates that he was an inefficient, or at most, a negligent employee, and as such there is insufficient evidence to sustain a conviction that he willfully retarded or obstructed the mail. Wooden admits that he delayed the mail:

Because I wanted to keep the route up to par, I took it upon myself to delay the first class mail. The mail I have delayed since October have been certifies [sic], first class mail and parcels. I would put the mail in relay boxes on my route with the intention

of delivering it at a later time, but as days went by the situation became worse. I realized the problem I've caused. If given the opportunity and cooperation, I would like to rectify the problem and become more efficient.

(Government Br. at 15). Contrary to his assertion of unwitting ineptitude, this statement indicates Wooden had every intention to delay the delivery of the mail: conduct proscribed by § 1701.

Wooden argues that the courts have interpreted the "willfully and knowingly" element to require a specific intent to commit a wrongful act. *See United States v. Schankowski,* 782 F.2d at 631 (holding that there is "no dispute that § 1701 requires specific intent to commit a wrongful act."). However, in *Schankowski,* the Sixth Circuit reversed a conviction of a defendant who endorsed checks that someone else had stolen from the mails. The Court reversed and remanded for a new trial under § 1701 upon determining that the trial court had not established that Ms. Schankowski saw the envelopes, much less had any idea that the checks were taken from the mails. Specific intent, as interpreted in *Schankowski,* merely requires that "the defendant knew that the effect of her actions would be to obstruct the mail." *Id.* at 632.

Similarly, in *United States v. Kirby,* 7 Wall. (74 U.S.) 482, 19 L.Ed. 278 (1869), the only Supreme Court case to deal with this issue, the Court refused to find a sheriff and his posse guilty of obstructing the mail, under a § 1701 precursor statute, when they arrested a postal employee, wanted for murder, while engaged in mail delivery. The *Kirby* Court stated:

> The common sense of man approves the judgment mentioned by Puffendorf, that the Bolognian law which enacted, "that whoever drew blood in the streets should be punished with the utmost severity," did not extend to the surgeon who opened the vein of a person that fell down in the street in a fit ... And we think that a like common sense will sanction the ruling we make, that the act of Congress which punishes the obstruction or retarding of the passage of the mail, or of its carrier, does

not apply to a case of temporary detention of the mail caused by the arrest of the carrier upon an indictment for murder. *Id.* at 486.

The defense argument that specific intent to delay or obstruct the mail is required for a conviction under § 1701 is ineffectual as applied here. There is no doubt that Wooden knew that placing unsorted mail in his relay boxes would result in the delay of the mail. The Tenth Circuit, affirming the § 1701 conviction of a postal carrier who discarded 33 Third Class circulars, found "[t]he issue of criminal intent is a factual question seldom provable by direct evidence but may be inferred from all the facts and circumstances of a case which reasonably tend to show a mental attitude." *United States v. Fleming,* 479 F.2d 56, 57 (10th Cir.1973) (citations omitted) (affirming criminal mail obstruction conviction notwithstanding the fact that the mail carrier was untrained and he considered the circulars he threw away undeliverable).

Similarly, the specific intent requirement is satisfied in this case. *Cf. United States v. Johnson,* 620 F.2d 413, 415 (4th Cir.1980) (affirming district court's conviction of School Superintendent who retained overnight a post card about him, but mailed to another, a school board candidate, the Court of Appeals held that the defendant "had no right to intentionally or deliberately obstruct or delay delivery, however slight, to the correct addressee."); *United States v. Upshaw* 895 F.2d 109, 111 (3rd Cir.1990) (affirming conviction of postal truck driver who delayed a "test" package overnight finding that "if there is a willful obstruction of the passage of the mail for some illegitimate reason there is a violation of § 1701 if the delay was measurable."); *United States v. Austin* 492 F.Supp. 502, 504 (N.D.Ill.1980) (holding that "[a]s a general rule ... this court believes that any obstruction of the mails, no matter how minor, if done wilfully and with improper motives, can constitute retardation, and therefore be a violation of 18 U.S.C. § 1701.") (remanded on other grounds).

Although a criminal conviction is a harsh penalty for a concededly overworked postal employee, there is sufficient evidence upon the record that Wooden knowingly and inten-

tionally breached the public's trust by delaying the mail for which he was responsible. In reviewing the Magistrate's verdict, it must be remembered that

> [t]he United States Postal Service has served as the keystone of the American communications system since its founding by Benjamin Franklin in 1775. In recognition of the indispensable role the Postal Service plays in the private and commercial life of the nation, Congress has provided criminal penalties for activities that interfere with the Postal Service's mandate to deliver the mail.

*United States v. Lavin,* 567 F.2d 579, 580 (3rd Cir.1977) (footnotes omitted).

### Conclusion

The Court below found that the evidence at trial showed by a preponderance of the evidence that Wooden knowingly and willfully obstructed and retarded the passage of the mail in violation of Title 18 U.S.C. § 1701. Drawing all inferences in favor of the verdict, as required by this Circuit, there is sufficient evidence to support the conviction. For the foregoing reasons, the conviction and sentence are affirmed.

It is so ordered.